Good morning, ladies and gentlemen. It's the time set for a hearing on Bach in the case of Marinelarena v. Sessions. Good morning, and may it please the court, Brian Goldman for Ms. Marinelarena. The conspiracy offense here should not have barred Ms. Marinelarena's cancellation application for three reasons, any one of which suffices to grant the petition. I'll start with the young issue because that's been the court's focus, but the court would only reach that issue if it assumes arguendo or rules against us on the threshold expungement and divisibility issues. So I do want to return to those. But even assuming the modified categorical approach applies, this conviction isn't a disqualifying controlled substances offense because the conviction didn't, quote, necessarily involve the elements of a federal controlled substances offense. Ms. Marinelarena did not need to prove affirmatively that it did involve some California-only substance. Instead, it's enough that the conviction didn't necessarily rest on the federal elements because there's a legal presumption that a conviction rests only on the least of the acts criminalized, and that distinction makes a difference where the record of conviction is ambiguous. Young erred by reversing that presumption and assuming that a conviction rests on the most criminal prong of a divisible statute. But Young is also fundamentally flawed at an even more basic level. Young essentially requires non-citizens to prove what may be unprovable by using a limited set of conviction documents to establish which prong of a divisible statute they were convicted under and that's just to get off the ground with their application for a discretionary form of humanitarian relief like asylum, like relief for battered spouses under the Violence Against Women Act, and like cancellation of removal. And there's no reason to think that Congress intended so absurd a result, especially when these forms of relief are ultimately in the government's discretion to grant or deny. And so there's an opportunity for case-specific adjustment based on the actual particulars of the non-citizens case. So the statute requires that the alien bear the burden of proving eligibility for cancellation of removal. Why shouldn't that burden of proof apply here? So, Your Honor, the burden does apply here. The question is just what it takes to satisfy that burden. So what the statute requires is that she not be, quote, convicted of a disqualifying offense. So that the inquiry... Did she bear the burden of proving she was not convicted of a qualifying offense? Yes, Your Honor, because... Explain how that was? Sure. So, so when, by operation of the legal presumption from Johnson and Moncrief. So she was convicted under an overbroad statute. So what we know is that by default that conviction isn't going to count until and unless there's a record of conviction that shows otherwise. Did she prove she wasn't convicted of a qualifying offense? She... Because we know that 11352 does include qualifying offenses. So how did she prove she wasn't convicted of a qualifying offense? But by making... Because it's a legal inquiry, Your Honor, she made the legal argument that her conviction was under a statute that was overbroad and as to which the presumption that it rests on the least criminal acts had not been rebutted. And that's all that she has to do. As the court, as the panel of this court recognized and said... So the government has the burden of proof that she was convicted of a qualifying offense? Is that your position? No, Your Honor, it's not the government's burden either. I think... You said rebut, which suggests that somebody has a burden of rebuttal. Well, Your Honor, it's a legal argument. So I just want to be... I don't see why that makes any difference at all. It makes a difference because the burden of proof doesn't apply in the ordinary way when you're just talking about a legal argument. So if you look at one of the other eligibility requirements, like her 10 years of continuous physical presence in the United States, which she submitted over 90 pages of evidence on, that's a classic factual question. She had to put forward evidence and show by a preponderance of the evidence that she had been there for that time. And the IJ asked for more evidence and she submitted more evidence. So do you think the Shepard documents aren't factual evidence? No, Your Honor. They're legal issues. The Shepard documents? Yes. Are those a matter of historical fact? What's in the Shepard documents? They're not, Your Honor, because the Shepard... Shepard documents are not factual. Is that your position? Correct. Particularly after the Supreme Court clarified in DeKalb that the inquiry is into the legal meaning of the elements of an offense. But the fact of her conviction is a historical fact, is it not? It's not in the sense that... You're either convicted or you're not. You're arrested or you're not. I mean, I don't understand your position that the fact of the conviction, you have arguments as to why that doesn't matter. But I don't understand why the fact of the conviction isn't a historical fact. Right. Sorry, I misunderstood. The fact that she was convicted... Of conspiracy relating to controlled substances. Right. And so once we know that she was convicted of Section 182 of the Penal Code, the question is then, what is the legal meaning of that conviction? So how do we get to know... This is the part of the case that I get confused about. Does she need... I gather all we have in the record about her conviction is the felony complaint and a judgment and that's it? We don't have the judgment. We have her expungement paperwork, which reflects that she was convicted of the conspiracy count. Now, who... First of all, who did bring that in? She brought those in. She did? She did. Was that her obligation to do that much? I mean, it's kind of odd because what she has to prove is that she wasn't convicted of a irrelevant crime. So does she have to bring in some documents about what she... from the conviction? No, Your Honor, and that's because this goes to the distinct question of the burden of production. And let me just say at the outset that this isn't a case like Almanza-Arenas, where the non-citizen was asked directly by the IJ to bring in some plea colloquy that he then refused to produce. She was asked for a California rap sheet, which isn't a Shepard document, and then asked for the charging document and the expungement paperwork, which she did produce. So that production question isn't squarely presented here. But doesn't the regulations require her to fill out an application that she has to attest under oath as to whether she was convicted criminally? Yes, and she did that. She produced that. She stated that she was convicted criminally. So then the question is, who has the burden of proving that she wasn't convicted of a qualifying offense? Right, Your Honor, and I'm just trying to... Who has the burden of proving that? So she says in her application, I was convicted in California of 182A relating to controlled substances. Then the IJ sees that in the record. Who has the burden of showing she wasn't convicted of a qualifying offense? So she bears the burden, but she satisfies it by making the legal argument that that's an overbroad statute. And so the question that Judge Berzon and Judge Graber, I believe, were getting at was then, who has the burden to submit more Shepard documents that might provide more clarity about that? But that's a distinct question about the burden of... Actually, the real question is when the documents are ambiguous, who loses? And ordinarily, whoever bears the burden of proof, when there is, you know, 50-50 or who knows, ordinarily the person who has the burden of proof loses in that situation, generically. I know you don't agree here, but isn't that the case? So yes, with respect to factual questions. The distinction here is that we don't start off with a blank slate and say, which prong was she convicted under? Was it A, B, or C? We start off with a legal presumption that Johnson sets out and Moncrief formalizes as a presumption that the conviction rests only on the least criminal of the divisor. But they're all equally criminal. The way the statute is overbroad is that it covers a lot of substances, or one or two substances, that the federal law doesn't cover. So they're equally least or equally most. They're just different substances. So I don't understand how the presumption has any bearing on it when the only question is what is the substance? Because most of them are equally criminal under federal law, and one or two are not. So I don't understand where least comes into it. So the way the Supreme Court has used least is to mean that a court's going to presume that when you're dealing already with a state statute that is overbroad, we're going to assume that the conviction arose under the overbroad portion of that statute. And isn't the point that she was, the question is what she was convicted of. And she wasn't convicted of heroin unless she was specifically convicted of heroin. Correct. And so unless you, the whole point of Dick Kemp in those cases, you don't get into the question of what actually happened. You want to know what she was convicted of. So the notion that she was convicted of having heroin is really not, it's not so much a legal presumption. It's that as far as the document shows, she wasn't convicted of heroin. She was convicted of the more generic offense because there's nothing to show that she was convicted specifically of heroin. That's correct. Isn't that what you're saying? Yes. Yes, Your Honor. Is there a conviction? Is there a crime in California of the crime of selling, transporting a narcotic? I thought the only thing that was in California was a crime of cell transport, heroin, cell transport, cocaine, cell transport, any of the, is there a cell transport narcotic crime in California? So not when charged directly under 11-352. There's no generic offense. There's just specific, 12 specific offenses relating to 12 different substances. So that's correct with respect to 11-352 when that's charged directly after Martinez-Lopez, which we're not challenging. There's, on our divisibility argument, our position is that when charged through the one-step abstracted lens of conspiracy, what California practice shows is that the conviction doesn't need to be for a heroin conspiracy or a fentanyl conspiracy or the like, California charges it as it did here, as it did in People v. Romero. It was charged exactly like it was charged here where the conspiracy count is generically to 11-352. Is it a, so in California, is there a conviction for conspiracy to violate 11-352 for cell transport a narcotic, or does it have to be a specific substance? It doesn't have to be a specific substance. It's just. And what's the case that says that? So People v. Romero reflects a charging document that looks exactly like the one here. So whether you take the. And are there jury instructions or a court decision saying that you can be convicted of a generic conspiracy to cell transport a narcotic? No, Your Honor. The jury instructions can really be read either way. They say that you have to have the intent to commit the target offense. And so that just begs the question of. But you've conceded that the target offense has to name a specific drug. And that's where it seems to be a disconnect in your argument. Well, so again, if we're talking about the divisibility argument, then it needs to name a specific drug when it's charged directly. So think about it the way Martinez-Lopez thought about it. If you have the same single act involving multiple drugs, is that one crime or many? And this court found that that would be many crimes. And therefore, 11-352 itself is divisible. I guess I don't understand California law to be quite so loose. Let's say you have a conspiracy to murder. And there are five potential victims that you're talking about. Can the state just generically say, well, you conspired to murder somebody. But we don't have to prove that there was any specific person that you intended to kill. I don't think I understand California law to be quite so loose. So I don't know the answer on that with respect to murder specifically. But what we do know with respect to conspiracy. And again, the way it was charged here. So if you take the Mathis-Peake approach or the way it was charged in People v. Romero, shows that and it makes sense that California wouldn't necessarily want there to be a specific drug charged at the conspiracy level. Just think about the overt acts that were. The jury, so three members of the jury could think that there was conspiracy to sell heroin. And three could think there was conspiracy to sell cocaine. And three could think there was conspiracy to sell marijuana. And it wouldn't matter. Is that your view of California law? Yes. And People v. Jasso shows that. Those are means, not elements of the offense, is what you're saying, of the conspiracy offense. Correct. You're saying that those drugs are means, but not elements. So the jury doesn't have to be unanimous. Correct. So what's the case that says that? So People v. So again, I don't have a case saying that it was error for a court to charge them differently than that. What we have are multiple examples where it's charged that way. And that's the best evidence to go on. And at a minimum, that suggests that there's not the certainty that Mathis requires to determine divisibility. But again, it. Can I ask, you haven't talked much about Moncrief. My understanding in Moncrief is that what was ultimately at stake there was a cancellation issue. Correct. And so is Moncrief, there's some discussion in Moncrief, I mean, reference to the cancellation and saying it's all the same. But is that dicta or not dicta? Or is it essential to the decision? I think it's essential to the decision. It's in the first two paragraphs of the court's opinion. And then. Moncrief was a removal case. Is that not a removal case? It is. A cancellation case? Correct. It's both a removal and cancellation case. Because there was no dispute that Adrian Moncrief was removable, at least as a controlled substances offender. What the court says in the first two paragraphs of the opinion, and then again at page 204, is that the upshot of holding that his conviction wasn't an aggravated felony is that he may now apply for cancellation or asylum, assuming he satisfies the other eligibility criteria. Didn't make a determination on cancellation of removal in his case. It did, Your Honor. It said he may apply for asylum or cancellation assuming he satisfies the other eligibility criteria, meaning the ones not having to do with not being convicted of an aggravated felony. Because I think that shows that the court understood, as it said in footnote four, that the analysis is the same in both contexts. And there's no need to rerun it. And Carachuri-Rosendo also shows this. Carachuri is a cancellation case. It's what the court cites in footnote four. And there's no suggestion that the burden of proof is going to play any role. Did it discuss the burden of proof in the case? Did anything turn on a burden of proof? Not in Carachuri. In Moncrief, yes. I mean, we went back to look at the briefs in Moncrief. And the petitioner raised the burden of proof, the government's burden of proof, to show removability as a reason why he should win. And the court didn't adopt that rationale. And so- Did the court address burden of proof in that? The court didn't address it. I'm just saying it's what the issue was before the court. But they didn't address it in the opinion in one way or another. That's right. They didn't address it one way or another. What they instead said is that there is this legal presumption that a conviction rests on the least of the acts, and that cancellation and removability have the same legal analysis. So the argument flows from that. Can I ask you to go back to what you've called the burden of production issue? Because I'm a little bit confused about your position there. Why isn't it right to think of the assembling of the Shepard documents as the factual component of this inquiry on which your client would bear the burden of proof? That's kind of how I tentatively view it, and I think you disagree with that, and I want to know why. Sure, so the first reason is that because burdens of proof and pardon me, burdens of persuasion and production are distinct concepts, the statute doesn't address the burden of production. What Greenwich Colliery says is that when Congress uses the term burden of proof, it means burden of persuasion. So the question then is, where does the burden of production come from? And there are three main sources that all point to the government. The first is the regulation, which talks about, and the BIA's interpretation of the regulation, which reflects that even where the burden of proof is on the other party, the burden of production can be assigned to a different party. So matter of vivis, it's the government bears the burden to show removability, but the non-citizen bears the burden of producing marriage information. Matter of AGG is the reverse of that. The non-citizen is seeking asylum and bears the burden, but the government bears the burden of production on information regarding firm resettlement. The second source of that is, as this court has recognized in other contexts, the ordinary allocation of burdens of production, which go to the party that's better able to produce that evidence. Can I just jump in? But what about that one subsection of the statute? I don't have it in front of me, but it's like C4B or something like that. Do you know what I'm talking about? Where it says, whether if it's by statute, regulation, or maybe even just the instructions in the application, you can be required to provide documentation to support your claim for eligibility for discretionary relief, right? So it doesn't say precisely that. It says you're required to follow the instructions, which she did here by answering the application. This issue is not in this case, is that right? That's correct, because she did, all that was asked of her. Can I just, can I finish? Yeah. Maybe it's not in this case, but I think I need to get this straight for my own benefit. So I think it does say you can be required to produce the documentation as the instructions may indicate. And the instructions for the relief she was seeking here do state, I think, in a couple of places, that you can be required to produce documentation related to your convictions, right? So what the application form that she filled out, which was the 2006 version of this application form, not the current one, says that the IJ may require further documentation. That's what I'm most interested in, because I agree that this is not like Almanza, but in the case like Almanza, where the, can the IJ say, listen, you've produced an information that is ambiguous. This is totally inadequate for me to make the legal determination that the modified categorical approach requires me to make. I need more. I need the full set of Shepard documents, and I'm directing you to go find them to the extent they're available. If the person in your client's shoes just says, thanks, but no thanks. I know they're out there. I know they're available, but I'm simply not going to do that. Haven't they failed to meet their burden? I would think of it kind of as the burden of proof on the factual component of the inquiry. Right, I understand. So let me give you a practical answer and a legal answer. The practical answer is there's no way that individual is getting discretionary relief from removal if they've been outright hostile to the request of the immigration court, because at a minimum that information is going to be relevant to the discretionary determination that comes at the end of the line here, and that would be a proper basis for denial. But the legal answer is no, the IJ can't request that because of the burden of production. So I've mentioned the regulation. There's the ordinary allocation of the burden of production. And I think as between the non-citizen and the United States government, the government is going to be in a much better position to produce these records. Keep in mind that we're dealing here only with non-citizens with criminal convictions, the vast majority of whom are going to be detained, especially after Jennings versus Rodriguez. 85% of detainees proceed pro se in removal proceedings. And this court sees relatively few of those cases, because they also don't file petitions for review regularly. But that's who's primarily going to be affected by this. And as the BIA's own decisions show, and as Moncrief mentioned, specifically about non-citizens in detention, those kinds of practical concerns weigh on assignment of the burden. The last piece is the paragraph right above the one you're referring to, Judge Watford, in the statute, section 1229 AC3B, which talks about the government's burden of proof to show removability. And that addresses proof of convictions. And I think the reason for that is that Congress anticipated that the way this would work, as it does in most cases, is that the government at the outset of the case is going to look into the criminal background of the non-citizen. To see if there's an aggravated felony to charge, to see if there's some other criminal ground of removability to invoke at the outset. So Congress didn't anticipate that the government would do what it did here, or what it did in a rather egregious fashion in Sandoval Lua. Which is sit back and wait for the non-citizen to seek relief. And then raise the conviction as a potential bar and disclaim any obligation to produce records or seek to benefit from the ambiguity in the record there. Could I ask you a question quickly on another topic, just because I don't want you to run out of time. You mentioned in your opening remark that expungement was an issue. Was that exhausted before the agency? So it was exhausted before the immigration judge, but not before the BIA. So do we have jurisdiction to consider it? Yes, Your Honor, because it's a matter that was foreclosed before the BIA. There was no relief that the BIA- Well, I don't understand that. It was foreclosed because they'd made a decision on it, but they can make a different decision on it. Well, no, Your Honor, because this court's cases had also held- Well, because they had upheld the agency's conclusion. They upheld, well, so one of this court's cases had upheld the agency's conclusion. A subsequent case held, just as a matter of the plain text of the statute, that an expunged conviction is still a conviction. But the agency had repeatedly held that its interpretation of the statute was that expunged convictions don't count. And there's not an obligation to fight BIA precedent every step of the way. There is a requirement of exhaustion. Ordinarily, we cannot consider, not just choose not to, but cannot consider an issue that was not either raised or at least expressly decided by the BIA. So why is there an exception for an issue that has been previously decided but you want reconsidered? Because, Your Honor, so Sun and then, I believe, Singh and Perez Mejia all say that when it would be futile to raise an issue before the BIA, there is no need- But what does futile mean? I mean, futile, they can change their minds, so why is it futile? Well, it's futile when the BIA has said repeatedly that this is its interpretation of the statute, and when that's been backed up by decisions from the governing court of appeals. Isn't that a more narrow sense? For example, seeking the declaration of statute is unconstitutional, something that the BIA has no power to do, which is a different kind of futility. Isn't that what our cases are talking about? I don't believe so, Your Honor. I believe that it also applies when there is case law expressly forbidding a position that the non-citizen wishes to take. If I could reserve my time- Are those cases of that variety the ones that you're citing? Ones in which the futility was that the issue had been decided previously? I believe so, but I'm not 100% certain on that. Thank you, counsel. Thank you. We'll hear from the government. May it please the court, Your Honors, Tim Rammons on behalf of the United States Attorney General, Jefferson B. Sessions III. Here, the main issue before the court is Petitioner's argument that Moncrief overruled Young v. Holder, that Moncrief's discussion of the Least Acts Presumption overruled this court's decision, Young v. Holder, that the burden of proof on an applicant for eligibility or for relief from removal loses that burden when there's an inclusive record of- That isn't what he's saying. He's not saying that it's overruled, it's a burden of proof. He's saying that it's made clear that this isn't a question of burden of proof. Exactly. Saying that Moncrief is inconsistent with Moncrief and its discussion of Least Acts Presumption. So the government respectfully asserts that Petitioner misunderstands in Moncrief and misunderstands- But wasn't Moncrief directly about cancellation of removal? I mean, my understanding of your position is that although the whole point of getting the aggravated felony out of the way in Moncrief was so he could get cancellation of removal, which is clear both from the majority and the dissent, that then you would have turned around and said, oh, but you can't get cancellation of removal because we're now going to take the same documents and view them in the opposite way for purposes of cancellation of removal. Is that your position? That that's what the Supreme Court was doing in Moncrief even though they knew, even though they said that the same thing applies in cancellation of removal and that was the ultimate issue in the case and everything else they said would have been pointless? Go ahead. So Moncrief had a conclusive record of conviction and that's why this footnote makes sense in that case when you're looking at relief and removability. So they got to the crime of conviction in that case, which was possession of intent to distribute marijuana. What they were deciding was what were the elements and means of that statute, remuneration versus non-remuneration of marijuana. The jury did not decide that issue, so you had to presume the least acts. It could be selling or it could be not selling marijuana. And because they got to that crime of conviction and determined the elements versus means, that would be the same in the relief or removal context. The statute's not going to change based on relief or removal at that point because it's a categorical inquiry. That is, in the next case, in the relief context, the jury's not going to suddenly have to decide between selling and not selling marijuana because that question is answered and that's related to visibility. That's the least acts presumption. That's what the court is saying, but the court doesn't have to answer that first question of what happens on an inconclusive record of conviction. And that's why Moncrief is not inconsistent with Young Beholder because it never gets to that question. It had a conclusive record of conviction. They started with a statute that prescribed multiple crimes, different ways to traffic in controlled substances. They found the record of conviction conclusively stated that the crime was possession of intent to distribute marijuana. Then they applied the least acts presumption to that categorical inquiry. What were the means versus elements of committing that crime? And they found the jury did not have to decide between selling and not selling marijuana. But then why did they refer to ambiguity? When did they refer to ambiguity? In the opinion, they said if it's ambiguous. If the record is ambiguous? Yeah. Well, they did not find the record ambiguous in that case. They were looking at elements versus means and saying, you don't have to decide between, the jury did not decide between selling and not selling marijuana. What is your response to counsel's argument that under California law, conspiracy to commit this drug offense does not require proof of a specific drug involved in the conspiracy? Well, the government responds that there's no case that states that one. And meanwhile, the government cited cases, and this is before the panel in their initial answering brief, that the Supreme Court of California has stated that to prove conspiracy, the jury has to agree on the target offense, and they have to agree that the defendant had the specific intent to commit every element of that target offense. That's the rule. Do you have any case that applies that to a drug crime, though, and says that the specific drug needs to be identified as part of the conspiracy? I believe in our answering brief, we cited an unpublished case. And that's as close as we got on that issue. But following from the Supreme Court's rule, there should be no distinguishing 11352 as some exception to these Supreme Court cases. Because- Go ahead. But that is the government's answer, because that is the rule in Supreme Court cases. And meanwhile, petitioner cites cases that are really about finding one conspiracy versus many conspiracies. But that rule works in conjunction with the Supreme Court rule that you have to show the specific intent, or the jury has to agree on the target offense, and agree on the specific intent to commit every element of that target offense. And by definition, one of the elements of the drug offense underlying is a specific drug. As the petitioner stated, they're conceding. They're not challenging Martinez-Lopez, which did make that finding. But what do we do with the cases they're pointing to where it's not charged that way? Well, the one case they have is Pupil versus Vermeer, which is a lower court decision one. And two, it doesn't purport to be verbatim quoting the complaint. It's just saying, here are the charges. And what was the issue in that case, ultimately, was petitioner's defense that he could be mistaken over which drug he intended to traffic in. And they said, you don't, it doesn't matter. We're trying, for the intent element, it doesn't matter if you were mistaken as marijuana or cocaine. But they're certainly not stating that the jury doesn't have to agree on a particular drug in that offense. To come back to Moncrief, you said in Moncrief the conviction was clear. But in fact, the court says otherwise. It says that with regard to the small amount, and then they say so, Moncrief's conviction could correspond to either the CSA felony or the CSA misdemeanor. Ambiguity on this point means that the conviction did not necessarily involve facts that correspond to an offense punishable as a felony under the CSA, so why is that the parallel problem? I would say that's precisely what I was discussing. They're stating that we don't, jury doesn't have to decide between those two. And that's the same. Yes, because it doesn't necessarily involve facts that correspond to an offense. And that's what I understand your opponent's argument to be. That's true here, too, based on the documents that we have. That's not a question of documents at that point. That's a question of what the jury has to decide. But it's a question of ambiguity over here. It's really a question as to whether or not it is certain. And whether we're talking categorical or modified categorical, the question is really the same. Is this necessarily shown by the conviction? And if you fail the categorical test, that means it's ambiguous. If you fail the modified categorical test, it means it's ambiguous. And the court has told us in Moncrief what you do with ambiguity. I think it's important to distinguish between ambiguity and what the documents say, and ambiguity about what a jury has to decide to convict someone for a crime. Because that is an element for us. It's ambiguous as to what the nature of the act is on which the conviction is based in either event. Exactly. So this intermediate step of trying to determine what the crime is, that could be ambiguous. We don't know what the crime is, but in Moncrief, they knew the crime. The record was not ambiguous. Ambiguity is not the right way to describe what they're looking at, I believe. They're looking at elements versus means. That's the word the Supreme Court used. You can say the Supreme Court used the wrong word, but that's the word they used. I don't think they're trying to say that they're presuming ambiguity there. They're saying, we don't know what a jury has to decide there. We know the jury does not have to decide between those two. A jury does not have to decide between selling or not selling marijuana. So you presume it could be either one. So it's ambiguous what he did to violate that crime. But the question isn't what he did. This is the thing we keep falling into. The question under De Camp and Moncrief and all those cases is never what he did to violate that crime, right? Right. It's what he was convicted of. So it was the statute of conviction in Moncrief, the state statute of conviction. There was no doubt that the person in that case had been convicted of that state statute of conviction. Is that correct? There was no doubt which crime amongst the many crimes he was convicted of. And so with respect to the offense of conviction, it was not divisible. Is that correct? Correct. In Moncrief. In our case, we know he was convicted of 11352, which is a divisible statute. And we don't know which divisible offense he was convicted of or she was convicted of. Is that correct? Correct. So we have a specific state statute of conviction that we know in Moncrief that was not a categorical match to the federal offense. Is that correct? Correct. And we don't have that situation in this case. Is that your position? That is the government's position. So that's why Moncrief never answers that question, what do you do with an inconclusive record of conviction? Well, you don't know the crime of conviction. So if Moncrief had to back up and had those multiple crimes in the initial drug trafficking statute and the record was inconclusive, they would have to get to this issue of who bears the burden of proof on that. But in this instance, and I don't think the burden of persuasion issue is in this case, or who comes forward. There seems to be no dispute that we have all the documents that are available. Is that right? No, that is in dispute. We look at the transcript of hearings. Petitioner submitted the complaint. Petitioner was asked by the immigration judge because it's also important to know the petitioner was working with her criminal defense attorney at the time she was in removal proceedings. She was working to vacate her conviction. So the immigration judge obviously asked her, can you get your criminal documents then? He asked for a COW DOJ specifically, but he asked for all related documents. He also asked for all documents that the criminal defense attorney had. And that was at one hearing. Subsequent hearing, she appears again and the IJ asked her, did you talk to your criminal defense attorney and get any further documents? And she simply stated no. All right, suppose, let's assume for now that we have all the available documents. Okay. And they don't show the answer. Then what? Then the burden of proof governs. Go ahead. Burden of proof governs. Burden of proof of something that's not provable essentially at this point. I mean, because the question isn't what she did. The question is what she was convicted of. There are a limited number of documents you're allowed to use for that. And if after looking at all those documents, you're left with ambiguity, what happens? This is essentially answered in Johnson, where the government bore the burden of proof. This is a criminal case. And so Johnson was a Florida statute that had multiple different crimes of battery in it. And the government could not show on the record of conviction which crime it was. So the government lost. And you'll see that the majority opinion comes back to that at the end of their opinion. They say, well, sometimes the absence of records will frustrate application of modified categorical approach, but that's simply how it works. And the government lost because they bore the burden of proof in that case. So what you also see in Johnson is the government backtracking, because they lost on proving what the record of conviction said. They lost their burden and saying, well, the entire statute then, we're going to argue categorically, it covers violent felonies. And they lost that argument, too. What do you do with this possible ambiguity in the record of conviction? There's this talk during instruction in every drug case that says the government need not prove that the defendant was aware that the drug was X, as long as he knew that it was some prohibited drug. That's all that's required by the instruction. The jury instruction in Martinez-Lopez for 11352, as the court noted, requires writing in the specific substance. So if that is the target offense, then that is knowledge defense. But still, the knowledge requirements requires only that he be aware that some prohibited drug. For proving knowledge and intent, but the jury still has to agree under Martinez-Lopez that there is a particular controlled substance involved. So I want to go back to this factual question that Judge Berzon was discussing. So it sounds like it's your position that we don't actually know whether additional documentation was available that would constitute other shepherd documents, such as the judgment itself, as one example. There's been no explanation in this case for why Petitioner did not submit the plea agreement, which she admitted there was a plea agreement in this case, or she did plead guilty pursuant to a plea bargain, and yet no documents were forthcoming. And so that's what's important to note in this case when the court's prior rule under Sandoval-Lulau, it creates this disincentive for someone who has documents in their possession to bring forward those documents. I understand that your position is that if we had a case in which it was removed for being an aggravated felon, so the government had an obligation to bring information forward, and so the documents were already in the record, and the conclusion was that it was inadequate, that the documents were inadequate to meet the government's burden of proof, and now she wants cancellation of removal, she will now come to the opposite conclusion with regard to the cancellation of removal on the same documents. Well, if the government lost its burden of removability, the case is over. No, usually there'll be another ground of removability. Oh, so in that case, yes. I mean, in other words, right, so if they were trying to remove her from two grounds, one of them was there, they were trying to prove that it was an aggravated felony, as in Moncrief, to preclude cancellation. That's why they would be proving it, right? If they had another ground for removal. And so now they're proving, they don't prove that it's an aggravated felony, because you're applying to Camp and Moncrief, and it doesn't work, and now she wants cancellation, and you take the same documents, and you come to the opposite conclusion. That's your position. That is just the tilting of the burden of proof, then. Right, so your position is now the same documents are going to lead to the opposite conclusion. Government loses its case under its burden, under an inconclusive record of conviction, unless the petitioner can submit. Rather than a non-factual burden, rather than a legal burden. Yes, a factual burden. And that's where the government asserts that the petitioner misunderstands the state's presumption. But another question is this. Day Camp spends a lot of time, as I recall, explaining that you can't do facts under these circumstances. For one thing, because you run into Alvaro Lopez and Apprendi and so on in a criminal context, and we have the same, and we're applying the same standards, so this is clearly not a factual inquiry. If it were a factual inquiry, since we're applying the same standards, we'd have a big problem in the criminal cases. But you're saying that, nonetheless, there is some factual determination that's being made here. Other than simply that she was convicted. Factual assessment of the documents and what they say. And what crime of conviction. So at least acts presumption doesn't presume the least culpable crime. What they say is a fact. All right. We know what they say. Yes, what they say is a fact. You can have reasonable minds could differ over what the documents say. And a good example of this is Medina Lara. This court's decision from 2014, where they looked at these documents and they explained that all the handwritten notes in the documents, there was a count three, count 3A, there's an abstract of judgment, that docket number's written on it, and they couldn't decide. But this isn't, I mean, but again, on the hypothetical that we have all of the relevant documents and we know what they say, then what? You have all the relevant documents and it's still inconclusive? Is that what you're asking? And we know what the words in them are and what they portend and they don't answer the question. Well, if you know what they say, I mean, we're not saying, then they're conclusive or not conclusive? What are you asking? They don't answer the question. Okay. So they don't prove what crime the person was convicted of. Then they would, the burden of proof governs at that point. But it's your position, as I understand it, that the factual record is not necessarily complete, that there are other Shepard documents that exist somewhere, but were not produced in the record that might or might not have demonstrated which drug was involved in this crime. Right. This is distinguished from a case like Saucillo, which the government and the petitioner agreed all the relevant documents that were available had been submitted. Without taking away from the discussion we've so far had, I want to take a slightly different tack. What we have is a statute that says in cancellation of removal cases, the alien bears the burden of proof. And it's really a question of statutory interpretation. What did Congress mean? Burden of proof as to what? It's obvious that Congress included in that the factual question of how long was the person there and so on, the various factual premises. It strikes me as entirely possible that Congress simply did not have in mind convictions when it was talking about burden of proof. It was talking about ordinary factual questions. Well, that's what the government asserts there is a factual question here. So that's really what the court has to answer. I understand that. That's exactly what you're saying. But I'm trying to figure out what might have been in Congress's mind when it talks about burden of proof. This is a pretty esoteric angels on ahead of a pen discussion that we're having. And I'm not at all convinced that Congress had this in mind at all when it was talking about burden of proof. I think it might have been talking only about ordinary factual questions. Well, Congress has two sections to that statute, subsection A and B, and they're pretty thorough throughout that. Subsection A says you shall have the burden of proof all eligibility requirements, one of which for cancellation is proving the absence of a disqualifying offense. Subsection B, the very first sentence says you should also produce documentation as requested by an application for relief. How can you ever prove the absence of a qualifying offense? If you come in with 15 offenses which are non-qualifying, there could have been a 16th. Do it the way Moncrief did it, actually. Moncrief, they produced the record of conviction and it showed the final crime. But there could be another conviction out there. How can you prove that you didn't have a conviction? Okay, so if there's another crime out there, then the record would show some indicia of that crime and that's where the burden is kicked in. So that's how it starts with any crime. There's something in the record that indicates the presence of a crime or an arrest. Counsel, can I take you, can I sort of walk through the process here? So let's start with the first. The first thing that has to happen here is that the government is going to issue an NTA and claim that the non-citizen is removable. And if they're going to allege that they're a crime, then the government is going to have to come forward with some proof of that, presumably. Am I correct on that so far? Correct. Okay. So the government will produce some record. The government can't produce a newspaper article that recounts that Miss Marina Lorena was convicted on such and such a day in court of a particular crime. They're going to have to come up with a judgment of conviction. Correct on that? No, the government would disagree with the specific documents that the government ever has to come up with in this case. So the government doesn't have to come forward with a judgment of conviction? Not with a judgment of conviction. But do they have to come forward? Well, how this normally comes up to walk you through that process is that you have an NTA where they have an encounter at the place of incarceration, most typically, and they find out there's an arrest and they get an arrest report. Here, you were arrested for this crime. And that is enough to meet the government's burden. As the board has explained in the matter of NBC, it's not an onerous burden. It's an initial burden of showing there's some crime. And she conceded removability, correct? I'm here. She conceded removability, so that took away any additional burden. Correct? That's correct. She conceded removability. We're just talking about what is this initial burden? But an arrest is not sufficient to satisfy the standard, right? It's got to be, you have to have been convicted, not just arrested. Yes, not sufficient to satisfy whoever bears the burden of proving the conviction. But the initial burden, that's never really an issue in these criminal cases because Because usually it's conceded. Well, it comes up in the form I-2113, Record of Deportable and Inadmissible Alien, where they interview that person initially, or it comes up in the application for relief. Right, but counsel, at some point, either the government has to come up with the judgment of conviction, or the alien has to concede that they were not only arrested, but convicted, because arrested is not going to be sufficient. But we do have to get to a fact of conviction, right? That is, whoever bears the burden has to get to the fact of that conviction. If you're issuing an NTA, who has the burden at that point? Well, if we're charging criminal movability grounds in that NTA, we bear that burden. Okay, all right, good. That's what I thought from the beginning. I don't know. I'm surprised it just took us that long to get there. I didn't know we were talking about criminal movability. At that point, then, if the alien is going to argue for cancellation of removal, she must come forward with something to show that she is eligible for cancellation. And if there's a judgment of conviction, or at least a fact of conviction has been admitted, then she's going to have to come forward with some evidence that there's ambiguity in that, that it's not a qualifying offense, or that, at the very least, it's an ambiguous offense. Okay? And that is her burden. Now, isn't it the government's burden at some point? Who has to come back to show that there is a plea colloquy, or a plea agreement, or some kind of a guilt colloquy, or a plea agreement, which are the principal shepherd documents that would be available to show that it was, indeed, a qualifying offense, if the judgment of conviction is otherwise ambiguous? And are we still discussing the government's burden of movability, or at this point? I'm trying to figure out. Now that once the alien has alleged eligibility for cancellation of removal, and has demonstrated that the judgment of conviction is ambiguous, now, who has to go forward to show the remaining documents, which are, that might or might not be available? That is, a transcript of a colloquy with the judge, or, for example, a written plea agreement. So, petitioner is trying to prove her right to eligibility for cancellation of removal. She's requesting that privilege from the government, and the Congress, according to the burden of proof statute, she has to prove there's no disqualifying conviction. Now, if she's already addressed the stat, the judgment of conviction, which has been presented by the government, and shown that it is ambiguous, why hasn't she satisfied her burden? She hasn't proved the absence of a disqualifying conviction. The record is ambiguous. We don't know what she was convicted of, then. That's correct. We don't. Right. Does she bear the burden of non-production, of something that may or may not exist, of something that, even if it does exist, she may or may not have in her possession? That's exactly how it works when the government bears the burden, as well. So, when we can't produce sufficient documents of removability, we lose under our burden. So, the government— Those are documents of removability, but you're assuming that where the government produces everything, but it's non-determinative of the ultimate question on the removal, that what's going on is the government isn't bearing its burden of factual proof, as opposed to it hasn't met its legal burden of demonstrating that she was necessarily removed for a reason that is cognizable. Right. And that's why there is—should be distinguished between this factual question of what the documents say, is your crime of conviction, versus getting to the legal question that's answered at the bottom of that inquiry, once you prove what crime it was. Exactly. This comes up only in divisibility cases, it would seem to me. Because the problem here is we're dealing with a divisible statute, and the issue, which is both factual and legal mixed, I guess, is which drug was involved in the crime of conviction because the statute is divisible. So I guess the question is whether that's factual or legal or some combination. I believe that—well, the government argues it's a factual assessment at that point. What do the documents say? And if you can't reach a conclusion based on the documents, you haven't carried your burden. So the least acts presumption does not presume the least culpable crime amongst many crimes. That's why I said it only comes up with a divisible statute, really, because then this least acts thing isn't really relevant to the divisibility issue. It is not. It is for once you've figured out the crime of conviction, and then to figure out elements versus means. What did the jury have to find and convict? What are the least acts of that one crime? So in this case, if this was removal proceedings rather than cancellation removal proceedings, and the government had presented only the documents that are in the record, the Shepard documents, would the government lose, then, for not carrying its burden of proof if that was the basis for its removal? Yes, Your Honor. Counsel, can I shift your attention just for a moment? What's your best argument that Young is not irreconcilable with Moncrief? Moncrief didn't have to address the record of conviction. That the burden of proof for an individual seeking eligibility for relief was not briefed or argued in that case. I know that came up in Petitioner's argument. But you can look through those briefs that were filed in that case, and it was not briefed or argued in Moncrief. They never reached an inclusive record of conviction or burden of proof in that case. So that's the best reason why Moncrief is not irreconcilable, or didn't speak to the issues in Young. But second answer is that the least acts presumption, as we just discussed, it has no role to play in this other inquiry. What is the fact of your conviction? So least acts presumption applies to one crime to suss out the elements versus means. To find out what a jury had to find to convict. It's not for presuming one crime over another. Because what would that mean for conspiracy? Conspiracy just has to be, if you agree that the jury has to agree on a target offense, then you presume one crime or another at that point. That's the entire, every California crime at that point. You have to go through them and look at the least acts. You are, in effect, agreeing with what Judge Ikuta said a little while ago then. Yes. Can I return for a minute to Judge Bybee's question? Because I'm not quite sure how you believe the process works. So we get the judge, the petitioner comes forward with the judgment of conviction. And it's ambiguous. Your argument is that the government then does not have a burden of rejoinder to prove that there are additional documents. That in fact, if the alien can't produce the additional documents, the alien loses even though sufficient, the judgment of conviction would be sufficient on its face to satisfy the burden. But then that's saying essentially the judgment is not sufficient. Because it doesn't show the crime of conviction. So we're saying it's an inconclusive record. Despite this one document of the judgment, we don't know what the crime of conviction is. It's still inconclusive. It doesn't matter what that document is. We need other documents to find out what the answer is. I have a procedural question. Let's assume in this case when the IJ said, can you get the rest of the documents from your criminal defense lawyer? If for some reason they couldn't figure out how to get them, could those be subpoenaed from the government or from the state court or from somewhere? Well, so that is, the federal government never had the documents in the first place. You'd have to go to the state court. Right. I mean, that's a problem that, you know, in this case, you have an argument that the documents were available to the petitioner. But in most cases, the documents just simply aren't available to either party. And in that case, your answer is the petitioner always loses. In the relief context, just as the government would lose in the movability context. Did the BIA decide this case on the basis that there were other documents, that she didn't meet her burden of production, essentially, that there were other documents out there she should have produced? That BIA simply says inconclusive record of conviction. Right. So once again, this whole question of the burden of production just doesn't seem to be in this case. At this point, maybe if we went back, maybe they could go into whether there are other documents. But at this point, it seems not to be relevant. The government's simply noting that when you have the old rule, like Sandil or Luau, you could have someone just sit on their hands and not submit documents, which in this case... Well, that depends how you set up the system. I mean, if they asked for it and didn't get it, then maybe not. But here, that's not the issue. Can I ask one other question very quickly about the expungement question and exhaustion? I noticed that you actually didn't say that it was unexhausted. Is that right? That you're not relying on exhaustion? In your supplemental brief, you don't rely on exhaustion. The supplemental brief, we don't rely on exhaustion. But we do agree that the issue is not exhausted. However, we think it's much more clear than that, that California Penal Code, an expungement under 1203.4, that issue's been settled in this court. It still counts as a conviction in immigration law. Any further questions? Thank you, counsel. Thank you. I'm going to try to make five points, if I can. First, I think Mr. Ramnitz hit the nub of the issue when he said that the government's position is that it loses removability cases when the documents are inconclusive because of the burden of proof. And that's simply incorrect. The burden of proof is neither sauce for the goose nor the gander because it's a pure question of law. And so that's why it's irrelevant in both contexts or it's easily satisfied. The burden just doesn't map on to this inquiry. Second, Mr. Ramnitz essentially said that the Supreme Court didn't meet ambiguity when it said ambiguity in Moncrief and that it doesn't apply to divisible statutes. But that's plainly incorrect because Moncrief adopted that language from Johnson, which dealt with a divisible Florida statute. When Johnson said we must assume it's the least of these acts, it was saying we have to assume it's the prong of this Florida divisible battery statute that wouldn't count or that would be least likely to count as a federal violent felony and then evaluate that one. So this presumption plainly applies to divisible statutes. And that's why Johnson says that the modified categorical approach is often going to be frustrated by missing documents or the like. But that's a common enough consequence that it doesn't bother us. And that's because, as Moncrief says at 205, this is an approach that is under-inclusive by design. And that serves judicial administration purposes to prevent mini-trials after the fact about the nature of a prior conviction. And it's also because this is all about relief, where there's going to be a discretionary step at the end of the line where these adjustments can be made. In contrast, under the government's rule, even people like Mr. Sauceda in the First Circuit case, who did all the legwork and sought out whatever documents he could find, the government would say, you are out of luck. You cannot even get off the ground with your application to be heard on the merits and reach a discretionary determination, simply because there's a transcript that does not exist. And that cannot be the rule. Counsel, is it your view then that Young and Moncrief are irreconcilable? So our view is twofold, Judge Rawlinson. First is that they're irreconcilable. But second is that whether or not they can be reconciled, the court should overrule Young, because the court is sitting on bunk. And we think that Young was wrongly decided at the outset, but that's become only more clear as the Supreme Court has decided. Moncrief and then in Mullooly made clear that this is a purely legal inquiry. Which do you think is your stronger argument? I think the stronger argument is simply to overrule Young directly. I think the Supreme Court's more recent cases offer a great deal of guidance on that question. But I think that's the most straightforward path to reach that. Was there a majority decision in Young? I keep trying to stay. I understand there was a judge who wrote a footnote. But in fact, when I started to count, I couldn't figure out whether there was a majority on the issue that we're talking about today. Right. It's a little bit of a lesson in Arrow's Paradox and how you view different preferences lining up. But I think the meaning of the bottom line rule was accepted by all members of the court. But it's correct that there were only two votes for the ultimate proposition that a non-citizen must use this limited universe of documents to prove what prong of a divisible statute he or she was convicted under. Which is, as the second dissent in Young said, an absurd, illogical, and unfair rule to impose when it's not set out by Congress. And in this case, as to the production question, which Judge Berzon is correct, is not squarely presented, Mr. Ramnitz said that the IJ asked for more documents. But the IJ asked only for the California DOJ, meaning the California rap sheet, and for additional documents relating to the vacator of the conviction. Because the only dispute before the IJ was over whether this was vacated on rehabilitative expungement grounds or on constitutional grounds. And that's because this case was pre-decamp when it was before the IJ. The IJ's decision just simply says this was conspiracy to distribute heroin because the IJ was relying on the free-floating facts in the criminal complaint. And so this issue hadn't quite arisen at that point. Mr. Goldman, I want to go back for a second to the exchange Judge Bybee had with Mr. Ramnitz. And I want your view on this point, just to clarify. Now, I believe, now, the government's position is if the petitioner comes forward with a conviction that's ambiguous, then at that point, that's not sufficient to make the petitioner's case. You agree with that? That, I'm sorry, I'm sorry. If the government comes forward with a record that's ambiguous? It doesn't matter who comes forward with it. But let's say a petitioner, whoever comes forward with a document of conviction that's ambiguous. Right, then that... At that point, the petitioner has not made her case. You agree with that? I agree that then in that case, it's not a disqualifying offense, either for removal or cancellation. No, that's not the same thing. I think the government's position is the petitioner has not proven that it's not a disqualifying offense because it's ambiguous. You agree with that? I disagree with that. Well, then what's the import of a case that ends, I mean, the proof ends with that document, an ambiguous conviction. In a cancellation case, what does that mean? So that simply means that the conviction is not necessarily a disqualifying offense, which is all that the non-citizen needs to show, that it's a conviction under an overbroad statute. So if the petitioner has a burden to prove eligibility, and this is one of the elements, that kind of conviction meets her obligation under the statute? Correct. And sufficient? Sufficient, because all that's necessary to show is that the conviction is not necessarily for- But it's also true, I'm sorry, go ahead. All right. Thank you. All right, I had one other question. Is it the case then that this whole problem only arises if there, as you understand the statute, if there's another grant for removal? Because if the grant for removal is the conviction, and it isn't sufficient for the, to meet the government's burden of proof, and that's all there is, the case is over. We never get to cancellation. Correct. The government's saying that this burden applies only as to relief from removal, like asylum cancellation relief under the Violence Against Women Act, when there's already been a determination of removability, which often is going to be the criminal ground itself. So the government would say that the same conviction could both be and not be a controlled substances offense or an aggravated felony, depending on which phase of those proceedings you're in, which just makes no sense and doesn't square with footnote four in Moncrief, where the court said Congress used the same term, conviction in both contexts. What happens if the government comes forward with, in the NTA and attaches to that a judgment of conviction, and the petitioner comes back and says, I'm looking at the judgment of conviction, I'm looking at decisions by the BIA in the Ninth Circuit, this is a divisible statute, the judgment of conviction is ambiguous, and therefore I'm still eligible for cancellation of removal. If the IJ says, is there a plea agreement or a plea colloquy, a transcript, qualifying Shepherd documents from this proceeding, does your client have any burden at that point? So, sorry, I just want to make sure I'm understanding the question correctly. We're assuming that the non-citizen is otherwise removable, and so therefore we're at the cancel- It's otherwise removable because it's a controlled substance. I see, yes. But the petitioner has come back and said, well, this is California, and we have this one provision here, and I might have been convicted of conspiracy of dealing with something that nobody ever charges. Right, and so if the question's then, is it also an aggravated felony or such, and therefore- Yeah, those are sort of aside at this point, but at that point, I am concluding that your client has satisfied her burden, and then the IJ says, what are we missing? Is there a transcript from this proceeding? Was there a plea agreement? Right. So is there a colloquy here at this proceeding? Does your client have to come forward with those at this point? No, so that goes to the burden of production question, and that's where the distinct burden of production would go with the government as a matter of AGG and matter of- Can the IJ ask you to produce those documents? I think the IJ can ask the question- And then hold it against you when you don't produce them? At the discretionary stage, yes. If you are outright hostile to the request, if you say, I have it right here, but I'm not giving it to you because I don't feel like it, that would be a ground for discretionary denial. But as a formal- But why isn't that sort of a perverse incentive in the whole system? In other words, if Congress has said, if you're seeking this form of discretionary relief, you have the burden to demonstrate that you're eligible to be considered for discretionary relief. And so the system that you're setting up by your argument creates an incentive not to produce the relevant documents. So I disagree with that, Judge Graber, because for the reason I just gave Judge Bybee, that because there is that discretionary fail-safe step at the end of the process, that is the deterrent. But Congress has said you don't reach that step unless you've demonstrated that you are eligible to reach that step. Right, and so we think that she's eligible simply by doing, as the Supreme Court said, by meeting the statutory definition of showing that you are not convicted of the elements of the offense. Because as Moncrief says, ambiguity means not convicted, and therefore not a disqualifying offense. We ask that the petition be granted. Thank you, counsel. Thank you both for your arguments today. They've been very helpful to the court. And we'll be in recess for the morning. All rise. The court for this session stands adjourned.
judges: Tashima, Thomas, Graber, W. Fletcher, Berzon, Rawlinson, Bybee, M. Smith, Ikuta, Watford, Friedland